**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **EDIN MAALIM ISSACK #A249-137-289** | **CIVIL ACTION NO. 26-cv-1065 SEC P** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **U S IMMIGRATION & CUSTOMS ENFORCEMENT** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

# REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 filed by Petitioner Edin Maalim Issack ("Issack"), an immigration detainee at Winn Correctional Center in Winnfield, Louisiana.

Because Issack has not established that there is no significant likelihood of his removal in the reasonably foreseeable future, the Petition should be DENIED and DISMISSED WITHOUT PREJUDICE.

## I. Background

Issack is a native and citizen of Ethiopia who entered the United States on or about October 15, 2024. Doc. 18 at 1; Doc. 18-1 at 1. He was ordered removed on September 25, 2025. Doc. 18-3. Issack did not appeal, so the removal order became final in late October 2025, when the time within which to appeal expired. Doc. 18-2 at 1; Doc. 18-3 at 2; 8 C.F.R. § 1241.1(c).

On November 24, 2025, ICE's New Orleans Enforcement and Removal Operations office ("ERO New Orleans") submitted a travel-document request package to ERO Headquarters. Doc. 18-2 at 2. After learning that passport photographs were required, ERO New Orleans added the photographs and resubmitted the updated request on December 30, 2025. *Id.*

ERO Headquarters scheduled Issack for a telephone interview with the Ethiopian Consulate, which occurred on February 25, 2026. *Id*. On March 6, 2026, ERO New Orleans requested an update and was advised that the travel-document request remained pending with the Ethiopian Embassy. *Id*. ERO New Orleans sought additional updates on April 17, May 12, and June 3, 2026. *Id*.

On June 30, 2026, ERO Headquarters informed ERO New Orleans that the Ethiopian Embassy required Issack to participate in a video interview. Doc. 18-2 at 3. The interview was conducted on July 1, 2026. *Id*. ERO New Orleans requested further updates on July 15 and July 29, 2026. *Id*.

As of August 10, 2026, Ethiopia had not issued travel documents and no removal plans had been arranged. ERO New Orleans is awaiting a response from the Ethiopian Embassy and continues to follow up with ERO Headquarters concerning the request. *Id*.

Meanwhile, following a 90-day custody review, ICE issued Issack a Decision to Continue Detention on April 28, 2026. Doc. 18-2 at 2. ICE determined that Issack

had not demonstrated that he would not pose a significant flight risk if released pending removal. *Id*.

Issack filed his Petition on April 6, 2026, alleging that his continued detention violated 8 U.S.C. § 1231(a)(6) because ICE was not likely to remove him in the near future and violated the Fifth Amendment by depriving him of his liberty. Doc. 1 at 6. He asserted that he had cooperated with ICE by supplying information about his citizenship, completing travel-document applications, speaking with Ethiopian consular officials, and providing fingerprints and identification documents. Doc. 1-3 at 3. In an amended filing dated May 22, 2026, Issack similarly asserted that ICE had not obtained and could not obtain travel documents and that there was no certainty as to when, if ever, Ethiopia would issue them. Doc. 5 at 2.

Respondents filed their response on August 10, 2026, and Issack, through counsel, filed a supplemental reply on August 24, 2026. Docs. 18, 19.

## II. <u>Law and Analysis</u>

After an alien is ordered removed, the Government generally has 90 days with which to effectuate the removal. *See* 8 U.S.C. § 1231(a)(1)(A). However, § 1231 permits detention beyond 90 days, for a period reasonably necessary to bring about that alien's removal from the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 699-701 (2001). In fact, detention for up to six months is "presumptively reasonable." *Id*. Afterward, if the alien "provides good reason to believe that there

is no significant likelihood of removal in the reasonably foreseeable future," the Government must "respond with evidence sufficient to rebut that showing." *Id*. at 701; *see also* 8 C.F.R. § 241.13 (setting forth the *Zadvydas* procedures). The petitioner bears the initial burden of demonstrating that a likelihood of removal in the reasonably foreseeable future does not exist. *See Andrade v. Gonzales*, 459 F.3d 538 (5th Cir. 2006). The alien's claim must be supported by more than mere "speculation and conjecture." *Idowu v. Ridge*, No. 03-CV-1293, 2003 WL 21805198, at *4 (N.D. Tex. Aug. 4, 2003) (citing *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)).

Issack's post-removal-order detention has exceeded the presumptively reasonable six-month period, but that does not automatically entitle him to release. Although Issack emphasizes that he has been detained for approximately 22 months in total, his removal order did not become administratively final until late October 2025. Doc. 18-2 at 1; Doc. 18-3 at 2. Thus, as of August 2026, Issack has been detained under the final removal order for about 10 months.

Issack asserts that he has cooperated fully with the removal process, but Ethiopia has not issued the necessary travel documents. Doc. 1-3 at 3-4. In an amended filing, he asserts that ICE "can't get" travel documents and that there is no certainty as to when, if ever, Ethiopia will issue them. Doc. 5 at 2. His supplemental

reply likewise relies primarily on the absence of issued travel documents, the lack of an arranged removal plan, and the length of his detention. Doc. 19 at 3-5.

The circumstances alleged by Issack do not provide good reason to believe that removal is not significantly likely in the reasonably foreseeable future. Issack identifies no current diplomatic barrier between the United States and Ethiopia, no legal impediment to his removal, no stay of removal, and no policy or institutional circumstance preventing Ethiopia from accepting its nationals. Nor has Ethiopia refused to accept Issack, ignored ICE's requests, or denied the request for travel documents. The fact that Ethiopia has not yet issued the documents establishes delay, but delay alone does not establish that the documents will not issue within the reasonably foreseeable future. *See Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1365–66 (N.D. Ga. 2002); *see also Elias v. U.S. Immigration & Customs Enforcement*, No. 6:26-CV-0020, 2026 WL 1983364, at *3 (W.D. La. June 9, 2026), *recommendation adopted*, 2026 WL 1979531 (W.D. La. July 8, 2026); *Wu v. Noem*, No. 1:25-CV-01412, 2026 WL 1001932, at *2 (W.D. La. Mar. 13, 2026), *recommendation adopted*, 2026 WL 1001920 (W.D. La. Apr. 13, 2026).

The record reflects continuing participation by Ethiopian officials in the repatriation process. After ICE submitted and resubmitted the required application materials, the Ethiopian Consulate conducted a telephone interview with Issack. Doc. 18-2 at 2. The Ethiopian Embassy later requested that Issack participate in a

video interview and conducted that interview on July 1, 2026. *Id*. at 3. Although no removal plan has been arranged, the Embassy's request for and completion of an additional interview indicates that the verification process remains ongoing and Ethiopia is actively engaged. Accordingly, Issack has not shown that his removal is not significantly likely to occur in the reasonably foreseeable future.

Issack's Fifth Amendment claim rests on the same contention that his detention has become indefinite because removal is not reasonably foreseeable. Doc. 1 at 6; Doc. 19 at 5. Because he has failed to show that there is no significant likelihood of his removal in the reasonably foreseeable future, the related substantive due process claim also fails.

## III. <u>Conclusion</u>

For the foregoing reasons, IT IS RECOMMENDED that the Petition be DENIED AND DISMISSED WITHOUT PREJUDICE to Issack's ability to seek relief if continued delay or changed circumstances later provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

Under 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and

Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except upon a showing of "plain error."

Signed at Lafayette, Louisiana on this 8th day of September, 2026.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE